IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| The **Target Electronic Devices,** which are currently located with the North Dakota Bureau of Criminal Investigation, Fargo field office, 374 34th Street South, Fargo, North Dakota 58103. | Case No. _3:24-mj-595_ |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, David E. Grabowski, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a licensed Peace Officer in the State of Minnesota and have been employed with the Crookston Police Department since 2013. My duties include the investigation, preparation, and presentation of complex cases and complaints originating within this agency and/or in conjunction with other agencies and local and federal prosecuting authorities. I have worked numerous investigations in conjunction with the Minnesota Internet Crimes against Children Task Force (MN ICAC). I am a federally deputized Task Force Officer currently assigned to the FBI's Crimes Against Children Task Force and have been since December of 2023. I am currently assigned to the Minneapolis Division, Grand Forks Resident Agency. I have served in leadership roles within the Crookston Police Department as I supervise and manage the investigations division. I have conducted investigations revolving around violent crimes, to include homicides, attempted homicides, aggravated assaults involving weapons; financial crimes; criminal sexual conduct crimes, crimes against children—both physical and sexual abuse, crimes involving electronic mobile devices and the internet to include electronic solicitation of children and the production, possession, and dissemination of child pornography

or Child Sex Abuse Material (CSAM). Through my every day work relating specifically to

CSAM material, I have reviewed thousands of examples of child pornography (as defined in 18

U.S.C. § 2256) in various forms of media, to include computer media. I have received

specialized training in investigative strategies to include methods of interview and interrogation,

ChildFirst-First Witness Forensic Interview Training, crime scene management, and various

investigative techniques for various crimes.

2.      This affidavit is submitted in support of an application under Rule 41 of the

Federal Rules of Criminal Procedure for a search of the items specifically described in

Attachment A of this Affidavit, specifically the Target Electronic Devices of BRIAN MICHAEL

BURKS  ("BURKS") for evidence related to violations of 18 U.S.C. §§ 2423 (Travel with

Intent); §§ 2251 (Sexual Exploitation of Children), §§ 2252 (Certain Activities Relating to

Material Involving the Sexual Exploitation of Minors) , and §§ 2252A (Certain Activities

Relating to Material Constituting or Containing Child Pornography), amongst others, more

specifically described in Attachment B of this Affidavit.

3.      Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that the **Subject Offenses** occurred in and with the Target

**Electronic Devices** and evidence related to the **Subject Offenses** is located on and within the

electronic devices.

4.      The statements contained in this affidavit are based, in part, on: my personal

observation, information provided by other agencies, reports about this and other investigations

that I have received, directly or indirectly, from other law enforcement agents; independent

investigation, and my experience, training and background as a federally deputized Task Force

Officer with the FBI. Since this affidavit is being submitted for the limited purpose of securing a

search warrant, I have not included each and every fact known to me concerning this investigation.

## **PROBABLE CAUSE**

5.    On April 10th, 2024, (former) Crookston Police Department (CPD) Detective (Det.) Ryan Brekken received a phone call from Benson, MN, police department Officer Paula Wilson. Officer Wilson informed Det. Brekken of the following information, among other things:

6.    Officer Wilson was investigating a reported child sexual abuse crime involving BURKS, whose date of birth is XX-XX-1980, and two juvenile victims. The first was twelve (12) year old Juvenile female, Jane Doe 1 ("JD1"), whose date of birth is XX-XX-2011, and the second was her seven-year older sister Jane Doe 2 ("JD2"), whose date of birth is XX-XX-2016, both of whom live at a known address in Benson, Minnesota. BURKS is a 43-year-old male, that resided at 1706 Hoven Lane, Crookston, Minnesota, Polk County, 56716. JD1 and JD2's father and BURKS are friends from college. BURKS often visits JD1 and JD2's father in Benson, Minnesota, and will often spend the night over weekends. On April 4, 2024, Officer Wilson received a report stating that JD1 disclosed that she had been raped.

7.    On April 4th, 2024, Swift County Social Services and Benson PD Officer Wilson conducted a forensic interview of JD1. I have reviewed a report of that interview drafted by Officer Wilson. JD1 disclosed the following, amongst other things:

    a.    On the evening of March 9, 2024, and the Morning of March 10, 2024, JD1 was staying at her father's residence in Benson, MN. BURKS was also staying at her father's residence for the weekend.

b.  After JD1's father went to sleep, BURKS told JD1, "Let's go do the thing that we like to do." JD1 told BURKS "No" because she wanted to play video games.

c.  JD1 disclosed that she pulled her pants down because BURKS told her to, that BURKS engaged in oral sex on JD1, and JD1 engaged in oral sex on BURKS.

d.  BURKS had JD1 masturbate his penis and BURKS' finger penetrated JD1's vagina. BURKS had used a "special kind of gel on his hands," the gel was in a container that he had in a plastic bag that he brought with him.

e.  BURKS "played with and sucked on" JD1's breasts. BURKS asked JD1 if he could take nude photographs of JD1.

f.  JD1 stated that BURKS had used his cell phone to take photos of JD1's breasts, naked backside, naked vagina, and photos while BURKS was penetrating JD1's vagina with his finger.

g.  On the morning of March 10, 2024, JD1's father left the residence in Benson, MN, and left JD1 and BURKS alone. JD1 reported that BURKS continued to sexually assault her and he took more photos of JD1's naked body.

8.    Benson PD Officer Wilson reported that JD2 had reported to JD2's father that BURKS had put his hand on JD2's privates, JD2 told BURKS to stop, and he stopped. JD2's clothes were on at the time she was being touched by him.

9.    On April 8, 2024, Swift County Social Services and Officer Wilson conducted a forensic interview of JD2. JD2 did not disclose any sexual abuse. However, it was noted that JD2 was nervous, quiet, lied face down when questions came up about touches, appeared to hide, and indicated "Yes," that someone had touched her.

10.     Detective Brekken reviewed a Crookston Police Department in-house record of Call for Service (CFS23025190) where a person, stated that BURKS keeps harassing Jane Doe 3 ("JD3"), her teenaged daughter, the harassment had been reported to the Minot Police Department (North Dakota), that there were warrants for BURKS' arrest, and JD3's mother was directed to contact the CPD to see what could be done. JD3's mother indicated that BURKS had sent JD3 gift cards for Victoria Secret via email and JD3's mother believed BURKS was soliciting JD3. JD3's mother further reported that BURKS had an unhealthy attraction to her daughter that they've had a years-long problem with BURKS, her daughter was thirteen years old (at the time of report), and BURKS acts romantically, flirtatiously, and in a stalking manner toward JD3. On or around November 13th, 2023, JD3 had received a single text message from a fake number. The fake number was known to be used by BURKS and the message indicated "Happy Birthday," and that he would be sending her gifts, and that's when the Victoria Secret gift card had arrived shortly after via email.

11.     It was learned that BURKS ultimately had a North Dakota Warrant issued for his arrest on September 1st, 2023, stemming from these incidents that had occurred in North Dakota.

12.     On December 6th, 2023, the CPD arrested BURKS on this stalking and harassment arrest warrant out of Minot, North Dakota. (CPD ICR 23001086) (51-2023-CR-01711).

13.     A criminal history was run on BURKS, and it indicated that there was no prior criminal history. Det. Brekken had contacted the Ward County State's Attorney's Office and learned that BURKS had an open stalking and harassment case with them.

14.     Benson PD Officer Wilson had indicated that she applied for and obtained a search warrant for BURKS, his address of 1706 Hoven Lane, Crookston, Minnesota, Polk

County and was looking for evidence related to suspected sexual exploitation of minors, specifically JD1.

15.    The search warrant was signed by the Honorable Judge Corey Harbott on April 10th, 2024.

16.    CPD Officers were advised that there was probable cause to arrest BURKS for a First-Degree Criminal Sexual conduct crime, Minnesota Statute 609.242.1a(e) that occurred in Benson, Minnesota.

17.    On April 11, 2024, CPD Detective Brekken arrived at BURKS' residence, 1706 Hoven Lane, Crookston, Minnesota, Polk County, 56716, at 06:00 AM. Det. Brekken parked on the street, facing south, outside of the target residence and observed a Kia Optima bearing Minnesota License Plate ALK 561, which was registered to BURKS. At approximately 07:35 AM, Det. Brekken observed BURKS walk to the black Kia Optima and conduct a U turn and head North on Hoven Lane. CPD Officer Sean Murphy conducted a traffic stop on BURKS. BURKS was asked to step out of the vehicle, and he asked CPD Officer Murphy "Am I under arrest?" Det. Brekken informed BURKS that he was under arrest for criminal sexual conduct and possession of child pornography. Det. Brekken then observed all the coloring to exit Brian Michael Burk's face, he turned pale white in color, was noticeably nervous and shaking, stuttering and could not get his words out smoothly.

18.    Det. Brekken observed a cellular phone in plain view and within reach of the driver's seat. BURKS was the sole occupant of the vehicle at the time of the traffic stop and his arrest. The cell phone was a Samsung cell phone in a case and Det. Brekken seized the cell phone (Samsung Galaxy 8 phone IMEI: 3597610803377). Det. Brekken also noted that in plain

view, in the back seat of the Kia Optima, was a computer tower and modem which was also seized.

19.     Minnesota State Patrol was on scene and towed the Kia Optima. Per State Patrol policy an inventory of the Kia is to be done. Det. Brekken opened the trunk of the Kia and observed another computer tower which was seized. Additionally, Det. Brekken observed a 9MM Sig Sauer pistol and magazines, a Smith and Wesson M&P AR15 rifle with an optic, and several loaded magazines for the AR15 rifle. The firearms and accessories were photographed and returned to the vehicle, which was secured.

20.     While seizing the computer towers, BURKS made an utterance to Officer Murphy stating something to the effect of "The computers are my friend's from Benson." Officer Murphy transported BURKS to Northwest Regional Corrections Center (NWRCC) on a hold for the Benson Police Department.

21.     Det. Brekken interviewed BURKS' wife, Rachel Jean Burks, ("RACHEL") whose date of birth is XX-XX-1983. RACHEL was advised that her husband was arrested, and RACHEL provided the following, among other things: BURKS is her husband, he spends most of his time in the basement, he has a gaming computer that he is on all the time, he only has one cell phone, he is "techy," he goes to Benson, Minnesota to visit their friend. She is aware of BURKS' stalking and harassment charges out of North Dakota, but he said that the family was making a big deal out of nothing; she doesn't believe he would lie to her, she is not aware of any sexual fetishes of his, she assumes he watches pornography but isn't sure, he is extremely paranoid around law enforcement and she does not know why, his password to his phone might be 0515. RACHEL was advised that there was a search warrant, and a search would be conducted at her residence. CPD Officers went back to 1706 Hoven Lane, Crookston,

Minnesota, Polk County and executed the aforementioned search warrant. CPD Officers present were Officers Nelson, Murphy, Edevold and Brekken. Benson PD Officer Wilson was also present.

22.    The search warrant was executed at approximately 08:30 AM.

23.    Det. Brekken noted that it appeared as if RACHEL and BURKS lived in two separate locations, her property appeared to be upstairs and his downstairs.

    a.  Downstairs:

        i.  There were several machines, a gaming computer set up, several hard drives and flash drives laying around, a microwave, toaster, and mini fridge. Food wrappers and garbage. Clothing and other items strewn about. There was property that was piled in the corner. It appeared that the property had not been moved for some time. There was a computer modem and an Apple desk top computer box (later identified as BURKS' work computer). There was male clothing strewn about the basement.

        ii.  There was a downstairs bathroom that contained men's bathroom items.

        iii.  Within view of the downstairs gaming computer, there was a live-feed Amazon Alexa camera that showed a view of the front street/driveway.

        iv.  The area around the gaming computer had men's cologne, fruit drinks, BBQ sauce, several controllers, and other items.

        v.  The basement back room contained different containers of items. There was a gun case and a case for the AR15 rifle.

    b.  Upstairs:

      i.  Upstairs there were items scattered. There were dirty dishes stacked up with old food. Dog feces matted into the carpet in the bedroom. The living room area had the computer RACHEL described. The upstairs bedroom contained female clothing and makeup items.

     ii.  The master bedroom had a mix of men's and women's items.

   iii.  The upstairs bathroom had mostly female items.

   iv.  Officers conducted a search of the residence.

24.    As a result of the search, numerous electronic and digital storage devices were seized.

25.    Det. Brekken and Officer Wilson took a recorded and Mirandized statement from BURKS at approximately 10:26 AM, and BURKS provided the following, among other things:

    a.  He was in Benson, Minnesota three to four weeks ago and spent the weekend at JD1 and JD2's father's residence; he brought a bag of personal items and computer video gaming stuff; he got there late on a Friday night and left around 03:00 PM on that Sunday afternoon. They played a lot of video games, watched movies and he talked to JD1 and JD2's father. He has known JD1 and JD2's father since college and visits him and his three kids a couple times a year. He did not know anything about the lubricant at first, but then admitted to maybe having it and JD1 was probably snooping through his bag. He then didn't know about it again, then remembering he took it out of his bag when he got home and put it in the bathroom (where it was subsequently found during the search of his residence). He stated that he gets set up in the basement and the kids are upstairs, he sleeps on an inflatable mattress and blankets that are provided. Later in the

interview he said that he has to sleep on a single-sized mattress because he knows JD1 likes to come in the bed early in the morning to cuddle. He said this way there is no chance that JD1 will sleep in his mattress. He said that all the kids come down and they play video games and watch YouTube. He admitted that JD1 and JD2's father spends most of his time upstairs while he, BURKS, is downstairs with the kids and that he doesn't really spend that much time with their father. He admitted to having JD1 in the basement alone with him Saturday night, he stated that he and JD1 only played video games and watched YouTube. He stated that he had lost track of time, but it was late when he told JD1 to go to bed. The next morning, Saturday morning, he stated that JD1 and JD2's father left the residence and he, BURKS, was left alone again with JD1. He stated that JD1 was upstairs in the living room, and he was between the living room and the basement.

    b. BURKS was asked about any sexual activity. He did not say anything and wished to invoke his right to remain silent.

26.    Benson PD Officer Wilson took custody of BURKS and transported him to the Swift County Jail.

27.    On April 15, 2024, Det. Brekken was contacted by Officer Wilson who informed him that she was doing a cursory search of the seized electronics from BURKS' residence. She found a jump drive that had a file named with JD3's first name. Upon looking into the files, Officer Wilson observed numerous files that included photos and videos depicting Child Sex Abuse Material (CSAM). Officer Wilson was initially (at the time of this report) not able to find any photos depicting JD1 during Officer Wilson's brief search of the materials.

28.    I decided that since the Child Sex Abuse Material (CSAM) was possessed in Crookston, Minnesota, Polk County, that the CPD would take control of that aspect of the investigation, Officer Wilson would turn over all evidence to the Crookston Police department except the two Samsung cell phones and the Astro Glide lubricant; the two cell phones would be submitted to the Minnesota Bureau of Criminal Apprehension (MN BCA), as it was believed there would be evidence on those devices that would assist Officer Wilson's criminal sexual conduct investigation involving BURKS and JD1.

29.    On April 15th, 2024, at approximately 12:15 PM, Det. Brekken collected the evidence from Officer Wilson and transported it back to the Crookston Police Department for further evidence processing.  Det. Brekken collected the following evidence from Officer Wilson:

        a.  CyberPower PC ET8868-4724

        b.  HP laptop computer CND7193RGS

        c.  HP laptop computer CND9061CQ3

        d.  Bravo laptop computer K2302N0121315

        e.  Samsung laptop computer BA68-05408A

        f.  Amazon Kindle SG98EG

        g.  Seagate hard drive black and blue in color NA7EFKSC (Labeled Xbox)

        h.  Seagate hard drive black and blue in color NA7HOT65

        i.  Apple iPad DMPQPPC7GSYL

        j.  Apple iPod CCQRDOTVGGNJ

        k.  Samsung Galaxy 8 phone IMEI: 3597610803377

        l.  Apple Mac Mini H2WWFD0L7Q6NY

m. Xbox series X 018174203517

n. Netgear router 4427537YA01A8

o. Samsung LAN extender W1s234EZ575260

p. Maxtor Hard drive Y32ECC5E

q. Seagate hard drive 9QF8F4ZH

r. WD 8T hard drive 7SGSJLJC

s. Seagate hard drive ZFLOCKT4

t. WD hard drive WCAPD1495080

u. Several SD cards

v. Several jump drives (Officer Wilson noted the one black and red in color Scan disk drive is the one on which she observed child pornography).

30.     On April 15, 2024, Det. Brekken called Minot Police Department Detective Stephanie Lentz and informed her of this multi-agency case. Det. Brekken requested and obtained photos of JD3.

31.     On April 16th, 2024, Det. Brekken did a manual search of one of the jump drives seized from the search of BURKS' residence. The jump drive was described as a 16GB, black and red Scan Disk [CPD evidence No. 23]. This search was based on the information that was provided by Benson PD Officer Wilson and her aforementioned approved and signed search warrant. Det. Brekken observed a multitude of images, files, and or data that depicted obvious minor children engaged in sexual activity, sexual play, and sexual penetration; much of this data involved both male and female adult offenders. Det. Brekken estimated the age range of children depicted in the images, files, and data was approximately five-years-old to approximately seventeen-years-old. Additionally, Det. Brekken noted that one file name was

congruent with JD3, which would make her a known minor victim. Based on Det. Brekken's training and experience, he recognized these image as meeting the definition established by Minnesota Statute as Child Pornography.

32.     Det. Brekken used the images provided by Minot Police Department's Det. Lentz and compared them against images found in the file name, which was congruent with JD3, and confirmed the minor victim was in fact, JD3. JD3 was engaged in at least one instance of digital-vaginal penetration by what appeared to be an adult male; images directed or focused on JD3's naked and exposed genitalia, and images depicting JD3 being vaginally penetrated by objects and sex toys. Det. Brekken observed at least one image depicting BURKS on that same flash disk.

33.     Det. Brekken noted that many of the files, images, and data appeared to have been sent or communicated through the Social Media Application Snap Chat, Inc.

34.     The files were dated back to the year of 2020.

35.     Officer Wilson ultimately turned over the two Samsung cell phones to the MN BCA ((1) Samsung cell phone IMEI 351835110539776 and (2) Samsung cell phone IMEI 357211454680945).

36.     On April 18th, 2024, I applied for and obtained a search warrant for the two target phones aforementioned, (1) Samsung cell phone IMEI 351835110539776 and (2) Samsung cell phone IMEI 357211454680945. The search warrant was signed by the Honorable Judge Leslie Metzen on the same date. I provided a copy of the signed search warrant to the MN BCA, where it was executed.

37.     On April 19th, 2024, I reached out and spoke with FBI Special Agent Daniel R. Genck and informed him of this investigation. The FBI coordinated a forensic interview to be

conducted on JD3 on Friday, April 26th, 2024, by an FBI Child and Adolescent Forensic Interviewer (CAFI).

38.    I had reached out and spoke with Minot Police Department Det. Stephanie Lentz and updated her further on this investigation. Det. Lentz advised that she was familiar with this family and the history between them and BURKS.

39.    On April 23rd, 2024, I was provided information from FBI Victim Specialist M. Sterkel, who spoke with JD3's mother on April 22nd, 2023.  JD3's mother provided the following among other things:  She has lots of screenshots/messages shared between BURKS and JD3, it sounds like mostly "puppy love" notes, such as "I love you and you will never know how much I love you," which was accompanied by BURKS in a shirtless picture; reports that BURKS has threatened JD3 that he would blow his head off if he couldn't have her; BURKS is known to previously have had access to a firearm.  Their Family has known BURKS since 2004 and although not related, their children have called him "Uncle Brian."  JD3 made a disclosure when she was 13 years old but was not offered a forensic interview at that time; JD3 stated that she feels guilty that another girl was hurt because he wasn't "focused on me."  It was further reported that Burks would send JD3 expensive gifts and Victoria Secret stuff, JD3 made a comment it was weird only she got expensive things from "Uncle Brian" and her younger brother did not; Burks bought a ring for JD3 on Mother's Day.  Burks was physically stalking JD3; law enforcement was called.

40.    On April 19th, 2024, at approximately 5:20 PM CPD Officer Edevold and Sgt. Hanson went to 1706 Hoven Lane, Crookston, Minnesota, Polk County to meet with RACHEL, as she reported finding additional evidence in reference to the CPD's investigation. Upon arrival, RACHEL had advised that her father, Peter Adam Olmstead, whose birthdate is XX-XX-1956,

had located a bag in the trunk of the 2014, Kia Optima, black in color, with Minnesota Place

ALK 561; VIN Number 5XXGM4A73EG281254. The grey bag was provided to Sgt. Hanson.

RACHEL had stated that her father had found the grey bag in the trunk and there were some

disturbing things like handcuffs in the bag. Sgt. Hanson spoke to Peter Olmstead and he

provided the following, among other things; he was helping his daughter locate tax paperwork,

he was looking for paperwork in BURKS' car that he was driving the day he was arrested. He

saw a grey sleep-apnea bag in the trunk, which he opened and the first thing he saw was a pair of

handcuffs. The bag was in the forward, left portion of the trunk. The bag was zipped and

closed. His daughter recognized the bag as BURKS' sleep apnea bag.

     41.    Sgt. Hanson confirmed that RACHEL had kind of "ruffled" through the bag and

touched a few things. She confirmed that the vehicle has been locked and she's the only one that

has had access to the vehicle since Thursday, April 11th, 2024. She identified the bag as

BURKS' sleep apnea bag and stated that she's seen him with this bag, that he hasn't been using

it for the last six to eight months.

     42.    Sgt. Hanson photographed and seized the items. RACHEL stated she panicked

when she saw the items, called law enforcement, and denied ever seeing or using the items in the

bag. Sgt. Hanson detailed the items as the following: handcuffs, black leather straps with chains,

O ring, strap on dildo, small black bag with multicolored anal plug, black whip, Kangaroo

pleasure pill, black leather strap with chain and buckle, black face mask, eye mask, wrist straps

and other miscellaneous restraint straps; black leather strap with buckle and gag ball, plastic bag

containing white tube of anal numbing cream, plastic bag containing chain with pink lace, and

other miscellaneous restraint straps.

43.     Officer Edevold was provided two yellow post-it notes and a dark in color, smaller container that Peter Olmstead had found downstairs by BURKS' computer. Officer Edevold reviewed the notes and described them as the following:

    a.   Note #1

        i.   Cottonwood Arizona

        ii.  Casper, wy/? Officer Burnell

        iii. Sgt. Williams Arkansas Nathan victim

        iv.  Minnesota officer loughery Bloomington

        v.   Inchan County security guard

    b.   Note #2

        i.   Deepwork by Newport

        ii.  diet myth by Spector

        iii. your brain on porn by wilson

        iv.  why we sleep by walker

44.     Officer Edevold also examined the dark container that was provided and observed a label on the container.  The label stated "HEAUX\pleaHER\10ML".  Peter Olmstead showed Officer Edevold downstairs and showed him where he had found the yellow post-it notes and container.  Officer Edevold took photos.  Officer Edevold then located an additional post note that had the following information:

    a.   Note #3

        i.   Bug out bag

        ii.  Cash

        iii. Credentials

    iv.  Transportation

    v.  medicine -

    vi.  phone - throw aways

    vii.  where?

    viii.  Stay under radar

    ix.  how long?

    x.  2 months - Nov. 11th (13th is Monday)

45.    On April 19th, 2024, at approximately 8:30 PM, CPD Officer Cox responded back to the residence and met with RACHEL and her brother, Adam Peter Olmstead, whose date of birth is XX-XX-1984.  Officer Cox learned that Adam Olmstead was helping RACHEL go through items in the house.  They reported finding what they described as "more electronic type items."  They led Officer Cox to a spare bedroom that I know to be BURKS' "Office." The following were what they described as "electronic type items," and was turned over and seized by Officer Cox:

    a.  Located on the computer desk area

      i.  Black Xbox USB drive S/N 427928483924

      ii.  White Nokia phone S/N G012445V3.0 /  IMEI 354596050839017;

    b.  Located in closet

      i.  Black Toshiba Hard Drive S/N 5A0001FXD / Model No. PH3100U-1EXB

      ii.  Yellow Straight Talk USB stick

      iii.  Black ASUS laptop S/N 99N0AS26215038D / Model No. U50A

      iv.  Black Kindle tablet with purple case Model No. D01400

    c.  Located in cubby area near bed

       i.  Black Samsung tablet with black case Model SM-T320

46.    On April 22nd, 2024, I returned to duty and contacted MN BCA Special Agent Heather Holden.  I advised that we had the aforementioned electronics and turned them over to her at approximately 09:30 AM.  SA Holden later applied for a search warrant for the following:

    a.  Samsung Cell PhoneCyberPower PC ET8868-4724

    b.  Seagate hard drives (90F8F4ZH, 9QFBEXD8, ZFLOCKT4)

    c.  Western Digital hard drive (WCAPD149080)

    d.  Maxtor hard drive (M32ECCSE)

    e.  WD hard drive (7SGSJLJC)

    f.  ScanDisk jump drive with SD card

    g.  Lexar jump 16G drive

    h.  PNY 1G jump drive

    i.  Blue in color pouch containing SD cards

    j.  Blue in color 32G SD card

    k.  Multiple SD cards in the back basement bedroom

    l.  iPad in black case found on the downstairs chair

    m.  Samsung laptop (5483 05403A) found on the downstairs chair

    n.  Samsun wireless adapter downstairs TV stand

    o.  Amazon Kindle

    p.  HD laptop from the garage

    q.  Cell phone. Blue in color phone with black in color case

    r.  Cell phone. Blue in color iPhone in blue in color case

    s.  X-box Seagate X2

t.   HP laptop (CNDY 193RGS)

u.   Cyber Power PC (ET8868-4724) gaming computer

v.   64G scan disk jump drive

w.   Apple Mac Minicomputer

x.   Bravel 15 laptop

y.   Amazon Kindle

47.    On April 23rd, 2024, FBI Victim Specialist M. Sterkel reported that she spoke with JD3's mother again and was provided with further information: JD3 disclosed that she was too afraid to say before but told her mother that BURKS "took her v card" and has been having sex with her in both Minnesota and North Dakota since she was 12-years old. JD3's mother also mentioned during this call that BURKS installed and had access to cameras and other electronic devices in their home. They have since called the company and changed the log-in information for the cameras.

48.    On May 2nd, 2024, I received a copy of the report concerning the FBI forensic interview that was conducted on JD3 on April 26th, 2024. The forensic interview was conducted by K. Weigl, FBI CAFI. Communication by parties in the interview room were electronically recorded and maintained. I reviewed the report and learned the following, among other things, in reference to JD3's disclosure: BURKS has known JD3's parents since before she was born. BURKS' son used to go to JD3's parents' daycare. JD3's family moved to Minot, North Dakota, and BURKS' family moved to Bismarck, North Dakota. BURKS' wife, RACHEL, worked at Target and got a higher-ranking job in Bismarck. The families stayed in contact and would visit each other. RACHEL then got a different job at Target, in Grand Forks, so BURKS' family moved to Crookston, Minnesota. The families still visited each other, but many times BURKS

would come alone to visit JD3's family in Minot, ND. He would sometimes help set up electronics. BURKS used to work at Best Buy on the Geek Squad and knows computers pretty well. He was able to hack JD3's computer. When JD3 was about 12-years old she went with her brother to Crookston to stay at "Auntie Rachel's" and "Uncle Brian's." They called them that because they have known them their whole life. BURKS became "touchy" and "weird" with JD3. He started buying JD3 more expensive things than her brother. He seemed like he wanted to be a dad to JD3 and take on a parenting role. JD3 confronted him about it. She told him he needed to treat her and her brother fairly. That is when the "grooming" started. He always wanted to go places with only JD3 and tried to separate her from everyone else. At first, JD3 was fine with it, because he was not weird about it. Then, after he was weird, she started making her brother come with them. When she went with her brother to BURKS' place in Crookston she slept in the spare bedroom. She woke up to BURKS on top of her and her pants were already down. She heard her brother in the basement yelling because he was playing video games. She froze in fear and did not know what to do. She tried to push him off her, but he is much larger than her and she could not get him off of her. She did not tell anyone about what happened. When BURKS came to Minot, he would single her out there as well. He would always want only JD3 to come with him. JD3's house has two different sections as it used to be two separate homes. JD3's parents stay on one side of the house and JD3's room is on the other side. When BURKS stayed at their home he stayed on the same side of the house as JD3. He likes to stay on that side as there is a full living room, dining room, kitchen, three bedrooms, and a bathroom. Her parents had not noticed BURKS acting weird to JD3. There were quite a few times that BURKS tried to have sex with JD3. There were many different places where this happened. It happened in Crookston and Minot, including when they went stargazing and a

couple of other times in the car. BURKS was very heavy and is taller than her. The first time

BURKS inserted his penis it really hurt. It felt like a "tear" and was "tearing down there."

When BURKS was told he could not see JD3 anymore, he kept trying to reach out. He tried

messaging her parents, JD3, and JD3's brother. JD3's brother has autism and did not really

know or understand what was going on. BURKS was told to stop many times. He sent JD3

packages and tried talking to her in other ways. He made fake accounts and tried to contact

JD3's friends on social media. He tried to find out information about JD3. The last time

BURKS sent a package it was a little more weird and "creepy." He messaged her off of a fake

number. JD3's family traced the number back to a retired hockey player living in Vegas. JD3

always had her mother reply for her. BURKS told JD3 that he had sent a package after he saw

her at the fair. At that point, JD3 had not heard from him for a few months. They messaged

RACHEL, thanking her for the package. RACHEL said she did not send it, nor did BURKS.

Later, BURKS admitted it was he that had sent it. JD3 said she could not meet him on Monday

because she had to take her grandma to an appointment. However, when she woke up on

Monday she was not feeling well. When she woke up, she saw a message that said BURKS

knew she had not taken her grandma to the doctor. That is when JD3 got "freaked out" and was

scared, because she knew he was close. She was sitting at the table in front of their Dutch doors

in the living room. She looked up and out of the window and saw his car. He could see directly

into her house. JD3 told her parents, and they called the police. He received a stalking charge

because of that. The police did not arrest him that same day, but they found him watching her

house through a gun scope. JD3 believes BURKS was watching her house that entire weekend.

BURKS was let go due to a lack of evidence. JD3 was upset by this because he crossed state

lines, so she was worried about what else he is capable of. BURKS has a concealed carry

permit. He carries a handgun with him and has an AR-15 in his trunk; it is always in his trunk. She knew it was there, which is what made JD3 scared. JD3 can think of at least thirteen (13) instances where BURKS had sex with her. Each time she did not know what to do and was afraid and she never told anyone. He never asked JD3 for videos or pictures of herself and she never sent any to him.

49.    I am aware that on August 21st, 2023, JD3 had disclosed to Minot PD that BURKS wanted JD3 to wear a "costume," described as a school-girl type skirt, cardigan, tie, and head band. Minot PD Det. Lentz had forwarded me a picture of the outfit and I recognized it as a Harry Potter Gryffindor House school-girl outfit.

50.    On May 14th, 2024, I, spoke with Benson PD Officer Wilson and she confirmed CSAM material. There were at least 164 images/photos of JD1. Officer Wilson estimated "thousands," of images/videos of JD3. I reviewed Officer Wilson's report and learned the following, among other things: on May 6th, 2024, Officer Wilson went to the BCA field Office in Alexandria, MN and obtained a hard drive that BCA Special Agent Williams had produced. The hard drive contained data extracted from BURKS' two cellular phone devices per search warrants signed in both Polk and Beltrami Counties. From May 6th through May 8th, 2024, Officer Wilson reviewed the extracted data. Officer Wilson observed hundreds of photos and videos including CSAM of known child victims and unknown child victims that will be passed along to Crookston Police Department and Minot Police Department. Officer Wilson has viewed approximately 126 photos and videos (Including visionary and binary copies) that depict JD1. The minor child is clearly identified by her person/face. In the photos and videos in which her face is not visible, Officer Wilson can identify her by her surroundings and clothing that appears identical in photos and videos where her face is visible. The couch, blanket, and air mattress at

the residence in Benson, MN (involved in the assault/s that occurred March 8th-10th, 2024) are

clearly shown in CSAM images of minor child JD1.  There were 126 extracted photos and

videos from BURKS' cellular devices with a "last modified date" of March 9th and 10th, 2024.

The photos and videos depicting JD1, depict her completely naked or with partial clothing on but

showing different areas of her body including her vaginal area, buttock area, and breast area.

Photos and videos depict JD1 lying down on a couch and on an air mattress and standing.  While

these photos are being taken, JD1 is observed using her fingers to spread apart her vagina and/or

holding her index finger next to her vagina. JD1 is also observed with her knees and

hands/elbows on the floor and photos taken with her butt cheeks spread apart.

51.     I reviewed the amended complaint concerning BURKS in Swift County,

Minnesota and learned the following, among other things: BURKS was charged out of the 8th

Judicial District; Court File No. 76-CR-24-133; Plaintiff: BURKS ; One Count of Criminal

Sexual Conduct- 1st degree- penetration or contact under 14 - actor > 36m older; Two Counts:

Criminal Sexual Conduct- 2nd degree- contact under 14 - actor > 36m older;; Four Counts: Use

Minors in Sexual Performance/Pornographic Work - Minor under 14 years old.

52.     I was advised that on May 15th, 2024, the amended complaint was signed.

53.     On June 24th, 2024, I, Det. Sgt. Grabowski, received the copy of the MN BCA

54.     On May 31st, 2024, I had received two hard drives containing the phone rips from

Burks' cell phone from the MN BCA ( (1)Samsung SM-G986U / IMEI 35183511059776 and (2)

Samsung SM-S906U / IMEI: 357211454680945).) I placed Hard Drive (1) into evidence and

Hard Drive (2) was a working copy to perform a search through.

55.     On June 3rd, 2024, I was attempting to search through Hard Drive (2), and the

hard drive malfunctioned.  I contacted the MN BCA and was advised that something must have

happened during the duplicating process. Due to the nature of this investigation, portions of this investigation occurring in North Dakota, I reached out to the ND BCI, and they advised that they would attempt to recover or duplicate the material for me onto a working hard drive.

56.     On June 20th, 2024, I, Det. Sgt. Grabowski, removed Hard drive (1) and Hard Drive (2) (CPD Evidence Numbers 047 and 048) from CPD Evidence Room and transported them to the Fargo, ND and turn them over to ND BCI.

57.     On June 24th, 2024, I received the Report on Exam of Physical Evidence pertaining to the back seat/seat cover out of BURKS' vehicle that was submitted to the MN BCA. I reviewed the report and learned that "no semen was detected." No further testing would be conducted.

58.     On June 26th, 2024, I received a working copy of Hard Drive (1) that was duplicated by the ND BCI. I reviewed the phone rips for the Samsung SM-G986U / IMEI 35183511059776 and Samsung SM-S906U / IMEI: 357211454680945. I performed a brief cursory search of the material discovered on BURKS and confirmed Child Sexual Abuse Material. I was able to discern that there was production of CSAM material and that there was at least one instance of production at Burks' residence; there were ten instances of production involving JD3 at her Minot, ND residence, one instance of production in a parking lot in a vehicle; There was at least one instance of production at the Ramada by Windham Bismarck Hotel involving JD3.

59.     I contacted MN BCA Special Agent Holden and requested that she transfer evidential items to the ND BCI for analysis. On July 2nd, 2024, SA Holden transferred the following items to the ND BCI:

      a.  Nokia Cellular phone S/N G012445V3.0 / IMEI 354596050839017;

   b. Amazon Kindle Mobile Device Model No. D01400;

   c. Toshiba Hard Drive S/N 5A0001FXD / Model No. PH3100U-1EXB;

   d. Samsung mobile device Model No. SM-T320;

  60. ASUS Laptop S/N 99N0AS26215038D / Computer Model No. U50A

  61. SA Holden advised that she had submitted the other electronics to the MN BCA laboratory for analysis.

  62. On July 16th, 2024, I met with ND BCA Special Agent Smith, and we went over portions of the extraction of BURKS' cellular phones. Among other things, we observed an image that captured and depicted a desktop monitor. I know that a desktop monitor is an electronic device that displays information from a computer, such as images, text, video and graphics. The image showed nine images of CSAM material and one still-shot of a video that depicted CSAM material displayed on BURKS' monitor. Of those images, I know that at least six of the CSAM visual depictions depict JD3.

  63. On July 22nd, 2024, ND BCA Special Agent Smith provided me with a copy of his report pertaining to extraction and analysis of BURKS' cellular phones (Samsung SM-G986U / IMEI 35183511059776 and Samsung SM-S906U / IMEI: 357211454680945). I reviewed SA Smith's report and learned the following, among other things: SA Smith located a folder titled with J3's first name "nudes" on the Samsung G986U and Samsung 906U. Located inside of this folder are 142 images of a female believed to be JD3. SA Smith located 34 images in the folder "Camera" on the Samsung 906U. These are images of a female believed to be JD1. SA Smith reviewed the EXIF data associated with these images and others and made the following conclusions associated with JD3:

  64. August 30, 2020 (This incident contains 5 images)

a.  Dump\data\media\150\DCIM\LizAnne Nudes\ 20200830_160533.jpg.jpg

   i.  This is an image of a bottomless female that appears to be 12 years of age. This image shows a hairbrush inserted into the vagina of the female.

      1.  GPS Coordinates (48.25375197 N, 101.29959700 W) would indicate that this photo was taken around the 1900 block of Skyline Drive in Minot ND. This image was taken with a Samsung SM-G986U.

65.  November 15, 2020 (This incident contains 1 image)

a.  Dump\data\media\150\DCIM\LizAnne Nudes\ 20201115_143310.jpg

   i.  This of an adult male moving the underwear to the side using his fingers to spread the labia apart exposing the female's vagina. The female appears to be 13 years of age.

      1.  GPS Coordinates (48.25376097 N, 101.29967000 W) would indicate that this photo was taken around the 1900 block of Skyline Drive in Minot ND. This image was taken with a Samsung SM-G986U.

66.  February 20, 2021 (This incident contains 7 images)

a.  Dump\data\media\150\DCIM\LizAnne Nudes\ 20210220_035720.jpg

   i.  This is an image of a bottomless female that appears to be 13 years of age. This image shows a pink sex toy inserted into the vagina of the female.

      1.  GPS Coordinates (48.25372500 N, 101.29962700 W) would indicate that this photo was taken around the 1900 block of Skyline

Drive in Minot ND. This image was taken with a Samsung SM-G986U.

    b. Dump\data\media\150\DCIM\LizAnne Nudes\ 20210220_035939.jpg

        i. This is an image of a bottomless female that appears to be 13 years of age. This image shows a nude adult male with his penis inserted into the female.

            1. GPS Coordinates (48.25373100 N, 101.29963700 W) would indicate that this photo was taken around the 1900 block of Skyline Drive in Minot ND. This image was taken with a Samsung SM-G986U.

67. February 21, 2021 (This incident contains 6 images)

    a. Dump\data\media\150\DCIM\LizAnne Nudes\20210221_043836.jpg

        i. This is an image of a bottomless female that appears to be 13 years of age. This image is an up-close image of the vaginal area. The female has her legs spread apart and there is an adult male hand next to her vagina. The adult has two fingers on the vagina spreading it apart.

            1. GPS Coordinates (48.25378800 N, 101.29971297 W) would indicate that this photo was taken around the 1900 block of Skyline Drive in Minot ND. This image was taken with a Samsung SM-G986U.

68. February 23, 2021 (This incident contains 2 images)

    a. Dump\data\media\150\DCIM\LizAnne Nudes\ 20210223_040931.jpg

      i.  This is an image of adult male pulling down the pants of a female that appears to be 13 years of age exposing her underwear. The center focus of the image is the vaginal area.

          1.  GPS Coordinates (47.78832100 N, 96.60824300 W) would indicate that this photo was taken around the 1700 block of Hooven Lane in Crookston MN. This image was taken with a Samsung SM-G986U.

  b.  Dump\data\media\150\DCIM\LizAnne Nudes\ 20210223_040931.jpg

      i.  This image is of a female that appears to be 13 years of age. The female appears to be sleeping and her shirt is pulled up exposing her breasts as the center focus of the image.

          1.  GPS Coordinates (47.78829000 N, 96.60818600 W) would indicate that this photo was taken around the 1700 block of Hoven Lane in Crookston MN. This image was taken with a Samsung SM-G986U.

69.    March 6, 2021 (This incident contains 1 image)

  a.  Dump\data\media\150\DCIM\LizAnne Nudes\ 20210306_191944.jpg

      i.  This is a nude image of a female that appears to be 13 years of age. Her up-close vagina is the center focus of the image.

          1.  GPS Coordinates (48.25379497 N, 101.29971997 W) would indicate that this photo was taken around the 1900 block of Skyline Drive in Minot ND. This image was taken with a Samsung SM-G986U.

70.   March 13, 2021 (This incident contains 2 images)

a.  Dump\data\media\150\DCIM\LizAnne Nudes\ Screenshot_20210313-

230213_Snapchat.jpg

i.  This is a nude image of a female that appears to be 13 years of age. Her up-

close vagina is the center focus of the image.

71.   March 15, 2021 (This incident contains 1 image)

a.  Dump\data\media\150\DCIM\LizAnne Nudes\ Screenshot_20210315-

233733_Snapchat.jpg

i.  This is a nude image of a female that appears to be 13 years of age. Her breasts

are the center focus of the image.

72.   March 20, 2021, approximately 12:54 (This incident contains 3 images)

a.  Dump\data\media\150\DCIM\LizAnne Nudes\ 20210320_125401.jpg

i.  This is an up-close image of the exposed breasts of a female that appears to be

13 years of age.

1.  GPS Coordinates (48.25391740 N, 101.29870020 W) would

indicate that this photo was taken around the 1900 block of Skyline

Drive in Minot ND. This image was taken with a Samsung SM-

G986U.

b.  Dump\data\media\150\DCIM\LizAnne Nudes\ 20210320_125359.jpg

i.  This is an up-close image of the exposed breasts of a female that appears to be

13 years of age.

1.  GPS Coordinates (48.25391700 N, 101.29869997 W) would

indicate that this photo was taken around the 1900 block of Skyline

Drive in Minot ND. This image was taken with a Samsung SM-G986U

73.    March 20, 2021, approximately 21:34 (This incident contains 2 images)

    a.    Dump\data\sec\photoeditor\150\storage\emulated\150\DCIM\LizAnne\20210320_213420.jpg

        i.    This is an image of an up-close exposed vagina that appears to be 13 years of age and appears to have ejaculate coming out of it. It appears that this photo was taken in an automobile.

            1.    GPS Coordinates (48.22027800 N, 101.32852900 W) would indicate that this photo was taken in a parking lot in Minot ND. This image was taken with a Samsung SM-G986U.

    b.    March 23, 2021 (This incident contains 1 image)

        i.    Dump\data\media\150\DCIM\LizAnne Nudes\ Screenshot_20210323-203517_Snapchat.jpg

            1.    This is a nude image of a female that appears to be 13 years of age. Her breasts and vaginal area are exposed.

74.    May 26, 2021 (This incident contains 3 videos)

    a.    Dump\data\media\150\DCIM\LizAnne Nudes \IMG_E0053.MOV

        i.    This is a 33 second video of a female that appears to be female 13 years of age masturbating. This video is a recording of a cell phone and contains the Snapchat conversation with a name of "JD3"

        ii.    It appears that this video was created with an iPad Air 2.

        iii.    It also appears that the user took screen shots of this video.

75.    September 3, 2021 (This incident contains 16 images)

    a.    Dump\data\media\150\DCIM\LizAnne Nudes\ 20210903_230407.jpg

        i.    This is an image of a nude female that appears to be 13 years of age. This image shows the female lying on her back with her legs spread apart and using her hands to pull her labia apart exposing her vagina as the center focus of the image.

                1.    GPS Coordinates (48.25383697 N, 101.29958397 W) would indicate that this photo was taken around the 1900 block of Skyline Drive in Minot ND. This image was taken with a Samsung SM-G986U.

    b.    Dump\data\media\150\DCIM\LizAnne Nudes\ 20210903_230724.jpg

        i.    This is an image of a nude female that appears to be 13 years of age. This image shows an adult male holding the throat of the female.

                1.    GPS Coordinates (48.25383597 N, 101.29958897 W) would indicate that this photo was taken around the 1900 block of Skyline Drive in Minot ND. This image was taken with a Samsung SM-G986U.

76.    September 5, 2021 (This incident contains 16 images)

    a.    Dump\data\media\150\DCIM\LizAnne Nudes\ 20210905_022927.jpg

        i.    This is an image of a female that appears to be 13 years of age. The female is wearing a plaid skirt and no underwear. The skirt is pulled up and her blouse is open exposing her breasts. This image shows the female lying on her back with

her legs spread apart and using her hands to pull her labia apart exposing her vagina as the center focus of the image.

      1. GPS Coordinates (48.25383800 N, 101.29958797 W) would indicate that this photo was taken around the 1900 block of Skyline Drive in Minot ND. This image was taken with a Samsung SM-G986U.

77. December 13, 2021 (This incident contains 16 images)

    a. Dump\data\media\150\DCIM\LizAnne Nudes\ 20211213_222016.jpg

      i. This is an image of a nude female that appears to be 14 years of age. This image shows the female lying on her back with her legs spread apart and using her hands to pull her labia apart exposing her vagina as the center focus of the image.

        1. GPS Coordinates (46.79868197 N, 100.78959000 W) would indicate that this photo was taken at the Ramkota Hotel in Bismarck ND. This image was taken with a Samsung SM-G986U.

    b. Dump\data\media\150\DCIM\Camera\ 20211213_223043.jpg

      i. This is an image of JD3 and another female that is wearing a name tag of AGS, whose birth year is 2008.

        1. GPS Coordinates (46.79868197 N, 100.78959000 W) would indicate that this photo was taken at Scheels in Bismarck ND. This image was taken with a Samsung SM-G986U.

78. December 19, 2021 (This incident contains 8 images)

    a. Dump\data\media\150\DCIM\LizAnne Nudes\ 20211219_024449.jpg

    i. This is an image of a female that appears to be 14 years of age. The female is bottomless and has her shirt pulled up exposing her breasts. The female has her legs spread apart and it appears has an adult male with his finger inserted into her vagina.

        1. GPS Coordinates (48.25366760 N, 101.29959170 W) would indicate that this photo was taken around the 1900 block of Skyline Drive in Minot ND. This image was taken with a Samsung SM-G986U.

79.    SA Smith observed additional images and videos believed to be JD3. These images and videos appear to be screen captures or screen recording of Snapchat messages that were captured using these devices. One of these photos is described as follows:

    a. Dump\data\media\150\DCIM\Camera\20230705_044009.png

        i. This is an image of a computer monitor. The monitor shows a Windows-based operating system. There are 9 images displayed on the screen and one video that is being played and paused. These images show JD3 exposing her breasts and vagina as well as sexual contact with an adult male.

80.    SA Smith located images of messages between BURKS and JD3.

    a. Dump\data\data\com.microsoft.office.outlook\files\Files\S0\1\Attachments\ 1000007610[18827812].jpg (8/11/2023)

        i. JD3 states "And yes I went to bed. I'm not back and forth. I'm confused is all. I don't want to date women. I want to be with a man. Ill never meet your expectations of two women when I only want to be a single partner. Brain I need to know before I hurt my family and deceive them how do you feel about

me? I'm sixteen this year. Do you see me as your niece or someone you want to be with? I cant play games with my heart!"

b.  Dump\data\data\com.microsoft.office.outlook\files\Files\S0\1\Attachments\ 1000007611[18882824].jpg (8/11/2023)

 i.  JD3 states "I actually do wear dresses and yes makeup. I've also felt like you treated me lime more than a niece. Your hugs, your holds and your touches were defining in me knowing you loved me more than a niece. I could be wrong but it is how you made me feel. If im wrong I can leave you alone. I just thought you were waiting and watching me grow into a mature woman."

c.  Dump\data\data\com.microsoft.office.outlook\files\Files\S0\1\Attachments\ 1000007612[18827787].jpg (8/11/23)

 i.  JD3 states, "I can't call were are doing a garage sale and I'm texting in bathroom. They can see who I call. I can delete my messages. You're not around to instruct my mom on how to use her phone. She so old she has her same dinosaur phone. I don't want to get caught calling and spoil my contact with you. I swear she has super sonic hearing."

d.  EXTRACTION_FFS.zip\Dump\data\media\150\DCIM\ Lizanne\Screenshot_20220111-181216_Snapchat.jpg (1/11/2024)

 i.  JD3 states, "Hey | have to tell you something that is going to break you But | can't do it no more | can't do this while taking pictures and videos for you Ik you got the stuff at the sex store earlier this week but | can't do any of this anymore. It's taken a toll on my mental health and school Ik | started it but we can't continue I am sorry,So no pictures videos inappropriate touching when

your here nothing . | don't expect u to buy me things nothing I just have to get
it off my chest bc it's really bugging me lam sorry but I can't do it no more
Sorry Ik it's a lot to process but | just want you to be uncle Brian with no
benefits."

    e.  EXTRACTION_FFS.zip\Dump\data\user\150\com.sec.android.gallery3d\cache\1
       1\7746610516720169025.0 (5/25/2022)

        i.  JD3 states, "Really am thinking of you and the storm sorry 'You will probably
           hit the storm in devils lake 'And you are really hurting my Feelings lately With
           the whole thing and me not wanting to be sexual with you.You have been
           really rude and it's hurting my feelings Ik you have feelings to but you your
           hurting mine more then u think . Why can't! just be excited to see you and it
           doesn't have to be cause we are doing sexual things Why l just don't get it why
           can't be happy to see you and hang out with u normally Especially when u pop
           off and have mean sarcastic comments like Ik I do to but it's mostly when u
           annoy me or make me mad and I am sorry for that I am apologizing for the
           future and past."

    81.    SA Smith reviewed the EXIF data associated with these images and others and
made the following conclusions associated with JD1.

    a.  March 9, 2024 23:41PM- March 10, 2024 1:05 AM (This incident contains 25
       images and 1 video)

        i.  Dump\data\media\150\DCIM\Camera\ 20240309_234239.jpg

              1.  This is an image of female that appears to be 12 years of age. The
                   female is bottomless with her shirt pulled up exposing her breasts.

The female appears to have her finger inserted into her vagina. This image was taken with the Samsung SM-S906U.

b.  Dump\data\media\150\DCIM\Camera\ 20240310_010425.mp4

    i.  This is a 13 second video of a nude female that appears to be 12 years of age. The female is seen using her fingers to rub her vagina. This video was taken with the Samsung SM-S906U.

c.  March 10, 2024 13:57 PM-14:03 PM. (This incident contains 7 images)

    i.  Dump\data\media\150\DCIM\Camera\ 20240310_140222.jpg

        1.  This is an image of female that appears to be 12 years of age. The female is bottomless with her shirt pulled up exposing her breasts. The female appears to have her finger rubbing her vagina. This image was taken with the Samsung SM-S906U.

82.    SA Smith located an additional 15 files that contain suspected child sexual abuse material. These video files were located on the Samsung SM-G986U in the folder "Album 1".

a.  Dump\data\media\150\DCIM\Album 1\ 0.10--.mp4

    i.  This is a 9 second video of a female that appears to be 11-13 years of age masturbating.

b.  Dump\data\media\150\DCIM\Album 1\ CumCummingGood(CumCumberGirl).webm

    i.  This is a 12 minute 17 second video of a female that appears to be 11-13 years of age masturbating utilizing her fingers and cucumber.

c.  Dump\data\media\150\DCIM\Album 1\Hovercraft.mp4

      i.  This is a 1 minute 51 second video of an adult male engaged in sexual

intercourse with a nude female that appears to be 12-15 years of age.

83.    Other images that had been taken with the Samsung SM-G986U include photos of the driver's license of BURKS, selfies of BURKS, and credit card of BURKS.

84.    Other images that had been taken with the Samsung SM-S906U include, selfies of BURKS, legal documents of BURKS, driver's license of BURKS and high school diploma of BURKS.

85.    It also appears that the user of the Samsung SM-S906U utilized this device to surreptitiously capture images of young females in their swimsuits, cleavage shots of young females, images of the buttocks of young females

86.    SA Smith located 3 Instagram accounts on these devices.

    a.  Account ID: 3454626365

    b.  Account ID: 51336174252

    c.  Account ID: 51749738466

87.    Several of the above images would be utilized during a Forensic Interview conducted on JD3.

88.    On July 25th, 2024, JD3 was forensically interviewed at the Federal Bureau of Investigation (FBI) Minneapolis Division - Minot Resident Agency, 100 1st Street Southwest, Minot, North Dakota The forensic interview was conducted by Kori Weigel, FBI Child and Adolescent Forensic Interviewer (CAFI). The interview was remotely observed by FBI SA Sylvia Hilgeman and myself. Communications by parties in the interview room were electronically recorded. A copy of the recording is maintained in evidence.

89.    During the interview, JD3 was shown a number of images that were suspected of depicting CSAM involving JD3.

90.    JD3 disclosed the following, among other things: JD3 remembered what type of lube and toys BURKS, BURKS brought as well as how BURKS talked to her., JD3 remembered that the lube was "pepperminty". It had a menthol kind of smell; like a very strong peppermint. The two toys BURKS had were black and pink. BURKS called the pink one "Bubblegum," but BURKS did not really have a name for the black one; BURKS said one of his "things" was a school girl outfit. JD3 had a Harry Potter costume that she bought at Hot Topic that had a skirt and a cardigan. BURKS talked about his "school girl fantasies." BURKS wanted JD3 to call him "daddy" during the intercourse. JD3 never did.

91.    JD3 identified herself in the images that were suspected of depicting CSAM involving JD3, described is SA Smith's above report.

92.    She was able to identify herself in a variety of ways to include, recognizing her face, wearing a "We Bleed Red" bracelet, which she got in the 8th grade, it was from a Student Council Convention JD3 attended in 8th grade; her painted fingernails; recognizing a hair brush, recognizing her own body, recognizing the location of the sexual assaults having occurred in her bedroom, at BURKS residence, or a hotel.

93.    BURKS had taken all of the photos himself using his Samsung cell phone.

94.    JD3 identified BURKS' hands as the hands involved in sexual contact with her vagina.

95.    BURKS would hold her legs to the bed using his legs, hands, or arms and BURKS would do that while he was taking pictures and sometimes during intercourse.

96.     JD3 identified herself as wearing the Harry Potter costume that she previously mentioned, this was in the basement bedroom in Minot, ND. BURKS liked schoolgirl role play and that was what was going on; she was in 8th grade, BURKS wanted to have intercourse.

97.     JD3 identified herself and BURKS in the image where she is being "choked," she stated BURKS wanted to see if that was something she liked; she remembers feeling lightheaded and hard to get air. BURKS said that he got a "release" from it and JD3 didn't know what that meant. One time, when JD3 was in the 7th grade, after a shower BURKS was already in her room and pushed JD3 onto the bed and started having intercourse.

98.     JD3 identified herself in a CSAM photo and identified BURKS as having penile-vaginal intercourse. She was able to identify BURKS by his hairy belly button.

99.     BURKS would ask her to send photos/videos; JD3 was asked to send photos of her body, and she would always take the photo in the moment when BURKS asked. Photos would be sent through SNAPCHAT, BURKS' SNAPCHAT was "ARKAYANPYRA." One time, BURKS asked JD3 to send a video of herself calling BURKS "Daddy," while she was touching herself. JD3 stated that happened when she was in 7th grade. JD3 admitted to taking the video on her phone and sending to BURKS through SNAPCHAT. JD3 identified her SNAPCHAT username. JD3 identified herself in CSAM images where she admitted to sending the pictures/videos to BURKS.

100.    JD3 advised that one time RACHEL had asked JD3 if she could clean their house (Crookston, MN), she JD3 rode with BURKS from Minot, ND to BURKS' house in Crookston, MN. JD3 thought intercourse happened twice that weekend, in the basement, after RACHEL went to bed.

101.    On August 12th, 2024, RACHEL contacted me at the CPD and advised that another external hard drive was located and she had concerns that something may be on there. Upon arrival, I collected a "Easy Store," external hard drive S/N JEKBTJ6Z. RACHEL stated that about one month ago she and BURKS finalized their divorce and part of the settlement was that all the property in the home was hers. RACHEL gave me consent to search the device and stated that all the electronics we have seized may have pictures of her child and just wants to get those images back.

102.    On September 20th, 2024, I dropped off the "Easy Store," external hard drive S/N JEKBTJ6Z (CPD Evidence Number 049) at the North Dakota Bureau of Criminal Investigation, Fargo field office, 374 34th Street South, Fargo, North Dakota 58103.

## BACKGROUND ON CHILD SEX ABUSE MATERIAL, COMPUTERS, AND THE INTERNET

103.    In my training and experience I am aware that electronic devices and the internet have become the predominant means of obtaining child sex abuse material for sexual gratification from viewing images and videos depicting the sexual exploitation of children and/or interacting with minors through chat applications and message boards. Computer systems electronic devices and the internet allow preferential sex offenders an anonymous virtual venue where they can meet other people with the same and similar sexual interest and electronically exchange imagery of children or adults engaged in sexual activity with children. These images are readily and easily available on the internet. This imagery can then be easily downloaded and stored on an electronic device or electronic device storage media and viewed at any time. Computers serve four essential functions in connection with child pornography and those who

like to view child sex abuse material or child pornography: (1) production, (2) communication, (3) distribution, and (4) storage.

104.     Collectors of sexually explicit images of minors often seek to correspond and meet with one another to share information and material to increase the size of or enhance their collection/s. Through this, individuals can amass an extensive collection of sexually explicit visual depictions of minors stored on electronic devices and/or cloud servers. Typically, it is not until law enforcement or others uncover their collections that collectors will destroy or seek alternative and secure hiding places to store their collections. Based on my training and experience, I know that people who typically like to view and possess visual depictions of minors engaged in sexual conduct, sexual performance, sexual contact, are very secretive, private and protective of these visual depictions. These people typically store these visual depictions on devices to which only they themselves have direct access to; such as mobile devices, electronics, computers, etc. Additionally, I am aware that people who use, possess, or produce these visual depictions will treat these images as a type or form of currency, often communicating, disseminating or trading these visual depictions to others who like to view, possess, and disseminate these visual depictions.

105.     Sometimes the only way to identify all parties involved in the exchange of child sexual abuse material over the internet is to examine the computer/electronic device, including internet history and cache, to look for footprints of the websites and images accessed by the recipient. For example, existing files, deleted files, and email files may show the receipt, possession and/or dissemination of child sex abuse material.

106.     I am aware that digital cameras and smartphones with cameras save photographs or videos as digital files that can be directly transferred to a computer by connecting the camera

or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or "Bluetooth." These digital files may be stored on a removeable memory card in the camera or smartphone. These memory cards are often large enough to store thousands of high-resolution photographs or videos.

107.    I know that electronic storage media of various types—including computer hard drives, external hard drives, CDs, DVDs, and "thumb" or "jump" or "flash" drives, which are very small devices which are plugged into a port on a computer, can store thousands of images or videos at high resolutions. Therefore, these make for an ideal repository for child sex abuse material. It is extremely easy for an individual to take a photo or video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some of these media storage devices can be easily concealed and carried on an individual's person. Smartphones and/or mobile phones are often and regularly carried on an individual's person.

108.    Based upon my training and experience, I am aware of a tactic to solicit minors by a form of "online grooming." Online grooming is when someone builds an emotional connection with a child to gain their trust for the purpose of sexual exploitation, sexual abuse, or trafficking. Children and young people can be groomed face-to-face, online, by a stranger, or someone they know. I know that offenders will often speak with multiple minors online, and try to gradually seduce their targets through attention, affection, kindness, gifts, and devote considerable time, money, and energy into this effort. I know that offenders who are electronically targeting minors will sometimes conceal their identity with fake names, fake user names, fake subscriber names, pose as friends/acquaintances, etc., and also conceal their personal phone number or other personal identifying information.

109.     I am aware that people who engage in the sexual abuse, sexual contact, sexual penetration, sexual exploitation of a minor child, and document the acts by video or photograph, often retain these visual depictions for the purpose of re-living the act of abuse, and will retain these visual depictions for extended amounts of time, sometimes forever, unless they are caught by law enforcement or someone else.

110.     Based on my training and experience I know there is electronic and internet based crimes to include manufacturing, producing, dissemination of images or works depicting sexual conduct which involve minors or appears to involve minors, as well as electronic solicitation of children, where the offenders use the Internet, a computer, computer program, computer network, an electronic communications system, or a telecommunications, wire or radio communications system, or other electronic device capable of electronic data storage or transmission. I also know that handheld mobile devices contain and retain data such as photographs, videos, telephone calls, voicemails, text messages, emails, mobile applications and/or social media sites. Furthermore, I know that many cellular telephones contain various types of data that can be retrieved from the cellular telephone, that some cellular telephones are able to access the internet and can retrieve or send information and data via the internet, and that some cellular telephones contain removable media storage cards which also can store various types of information and data. I know that all this information and data can be useful in an ongoing child pornography production, possession, and dissemination crime; solicitation crimes and sexual conduct crimes where a cellular telephone, electronic device, computer, or other handheld mobile device is being used.

111.     I have reason to believe that there are materials, photos, videos, language, or communication that relates to or describes sexual conduct to a child or someone the person

reasonably believes is a child, specifically, videos, photos or communication between BURKS JD1, JD2 and JD3 as well as unidentified minor children on the target devices. This information will help show that a particular person did commit this particular crime, as well as may help identify other unknown minor children victims.

## TECHNICAL TERMS

112.    Based on my training and experience, I use the following technical terms to convey the following meanings:

113.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

114.    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by

connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

115.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

116.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives

signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

117.   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

118.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

119.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections

between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

120.    Based on my training, experience, and research, I know that the **Target Electronic Devices** have capabilities that allow it to serve as a wireless telephone, connection to the internet and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

121.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device.  This information can sometimes be recovered with forensics tools.

122.    Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how

the devices were used, the purpose of their use, who used them, and when. There is probable

cause to believe that this forensic electronic evidence might be on the devices because:

123.    Data on the storage medium can provide evidence of a file that was once on the

storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a

paragraph that has been deleted from a word processing file).

124.    Forensic evidence on a device can also indicate who has used or controlled the

device. This "user attribution" evidence is analogous to the search for "indicia of occupancy"

while executing a search warrant at a residence.

125.    A person with appropriate familiarity with how an electronic device works may,

after examining this forensic evidence in its proper context, be able to draw conclusions about

how electronic devices were used, the purpose of their use, who used them, and when.

126.    The process of identifying the exact electronically stored information on

storage medium that are necessary to draw an accurate conclusion is a dynamic process.

Electronic evidence is not always data that can be merely reviewed by a review team and passed

along to investigators. Whether data stored on a computer is evidence may depend on other

information stored on the computer and the application of knowledge about how a computer

behaves. Therefore, contextual information necessary to understand other evidence also falls

within the scope of the warrant.

127.    Further, in finding evidence of how a device was used, the purpose of its use,

who used it, and when, sometimes it is necessary to establish that a particular thing is not present

on a storage medium.

128.    Nature of examination. Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit the examination of the devices

consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

129.    Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

130.    The warrant I am applying for would permit law enforcement to use FBI, MN BCA, ND BCI tools to open, access, and examine contents of the electronic devices without knowing the device's password and without access to physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) which could be used to unlock the devices.

## CONCLUSION

131.    Your affiant respectfully submits that there is probable cause to believe that the Subject Offenses have been committed and evidence of the Subject Offenses is located on or within the **Target Electronic Devices**. Based upon the information above, your affiant requests a search warrant for the items described in Attachment A for items described in Attachment B. The foregoing is true to the best of my knowledge and belief.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.

Respectfully submitted,

David E. Grabowski
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me
on September 30, 2024: via telephone.

ALICE R. SENECHAL
UNITED STATES MAGISTRATE JUDGE